<u>Estate of Charles Howard Zimmerman, Robert Clayton Stevens, Personal Representative v. Erich E. Blatter, et ux.</u>, No. 62, September Term, 2017

**ACTIONS TO QUIET TITLE – MD. CODE ANN., REAL PROP. (1974, 2015 REPL. VOL., 2016 SUPP.) ("RP") § 14-108 – RP §§ 14-601 TO 14-621 – MARYLAND RULES 12-801 TO 12-811 – RETROACTIVE APPLICATION VERSUS PROSPECTIVE APPLICATION – REMAND –** Court of Appeals held that Md. Code Ann., Real Prop. (1974, 2015 Repl. Vol., 2016 Supp.) ("RP") §§ 14-601 to 14-621 and Maryland Rules 12-801 to 12-811, governing actions to quiet title, apply retroactively to all cases pending in court when statutes and Maryland Rules became effective, including this case, which was pending in Court of Special Appeals. Specifically, Court of Appeals concluded that new statutes and Maryland Rules apply retroactively because they govern procedures that are related to actions to quiet title and are remedial in nature, they do not impair any substantive or vested rights, and neither General Assembly nor Court of Appeals, in enacting new statutes and adopting new Maryland Rules, respectively, has shown contrary intent. Additionally, Court of Appeals held that, when applied to this case, new statutes and Maryland Rules did not require dismissal for failure to join as defendant in action to quiet title deceased record owner who has no known personal representative. Although, under RP § 14-108(b), record owner is required to be made defendant to action to quiet title, under circumstances of this case, Court of Appeals determined that proper course of action was to reverse Court of Special Appeals's judgment and remand case to that Court with instructions to vacate trial court's judgment and remand case to trial court for further proceedings, so that plaintiff can follow procedures outlined in the new statutes and Maryland Rules concerning joinder of defendant who is deceased record owner with no known personal representative, *i.e.*, file amended complaint that is accompanied by necessary affidavit.

Circuit Court for Frederick County
Case No. 10-C-14-001668

Argued: March 1, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No. 62

September Term, 2017
_____

ESTATE OF CHARLES HOWARD
ZIMMERMAN, ROBERT CLAYTON
STEVENS, PERSONAL REPRESENTATIVE

v.

ERICH E. BLATTER, ET UX.
_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.
_____

Opinion by Watts, J.
Hotten, J., dissents.
_____

Filed: April 20, 2018

This case concerns a dispute over title to a six-acre parcel of real property ("the Disputed Property") located along the boundary of two farm properties in the Liberty Election District in Frederick County, Maryland. Specifically, to the east of the Disputed Property lies a farm that was formerly owned by the Estate of Charles Howard Zimmerman ("the Estate"), Petitioner, which consists of three tracts of land at 8260 Dollyhyde Road in Mount Airy, Maryland ("the Zimmerman Farm"). By a deed dated January 1, 2013, Robert Clayton Stevens, the Estate's personal representative, on the Estate's behalf, conveyed the Zimmerman Farm to George C. Stevens ("George") and himself in his individual capacity. To the west of the Disputed Property lies a farm that is known as the Laughlin Farm, which is currently owned by Erich E. Blatter and Dr. Susan V. M. Maharaj, Respondents, located at 7977 Timmons Road in Union Bridge, Maryland ("the Laughlin Farm"). Neither the Estate nor Respondents is the record owner of the Disputed Property. Indeed, apparently, the record owner of the Disputed Property is an individual who has been deceased for more than 100 years, with no known personal representative.

On June 4, 2014, on the Estate's behalf, Stevens filed in the Circuit Court for Frederick County a complaint against Respondents seeking to quiet title to the Disputed Property, alleging that the Estate owned the Disputed Property through adverse possession.[1] Respondents also claimed ownership of the Disputed Property, and filed a

---

[1]In the action to quiet title, the Estate also included as defendants: Mid-Atlantic Farm Credit ACA, the lender on Respondents' deed of trust to the Laughlin Farm; James D. Aird, the trustee on that deed of trust; and Mortgage Electronic Registration Systems, Inc., the beneficiary on that deed of trust. On June 9, 2015, after those three defendants agreed to be bound by the circuit court's order, the circuit court entered a consent order

counterclaim against the Estate for trespass. No record owner of the Disputed Property was made a party to the action to quiet title. Following a two-day bench trial, the circuit court denied the counterclaim and ruled that, as between the parties, the Estate had the right to possess and use the Disputed Property by adverse possession. The circuit court noted that it could not rule that the Estate had "absolute ownership" of the Disputed Property because no record owner had been made a party to the action. On November 2, 2015, the circuit court issued an order consistent with its oral ruling, denying the counterclaim and determining that, "as between the parties[,]" the Estate had the right to possession and use of the Disputed Property by way of adverse possession. In other words, the circuit court's ruling would not be effective against the record owner of the Disputed Property or any other person with an interest in the Disputed Property, and the circuit court did not determine ownership of the Disputed Property.

Respondents appealed. On June 26, 2017, in an unreported opinion, the Court of Special Appeals vacated the circuit court's judgment and remanded this case to the circuit court with instructions to dismiss this case. The Court of Special Appeals determined that, although the circuit court correctly observed that the action to quiet title lacked a necessary party, *i.e.*, the record owner of the Disputed Property, the circuit court erred in proceeding with "trial to determine which party to the action had a superior right to possess the Disputed" Property. Thereafter, the Estate filed a motion for reconsideration, which the Court of Special Appeals denied. On September 19, 2017, the Estate filed in this Court a

---

dismissing the Estate's claims against them. Thus, those three defendants are no longer parties to this case.

- 2 -

petition for a writ of *certiorari*, which this Court granted.  See Estate of Zimmerman v. Blatter, 456 Md. 251, 173 A.3d 153 (2017).

In the meantime, while this case was pending in the Court of Special Appeals, but before that Court issued its unreported opinion, effective October 1, 2016, the General Assembly amended the statute governing actions to quiet title, Md. Code Ann., Real Prop. (1974, 2015 Repl. Vol.) ("RP (2015)") § 14-108, and added a new subtitle governing actions to quiet title, Md. Code Ann., Real Prop. (1974, 2015 Repl. Vol., 2016 Supp.) ("RP") §§ 14-601 to 14-621.  See 2016 Md. Laws 5703-04, 5711 (Vol. VII, Ch. 396, H.B. 920).  And, effective April 1, 2017, this Court adopted a new chapter in the Maryland Rules, Maryland Rules 12-801 to 12-811, governing actions to quiet title.  See Court of Appeals of Maryland, Rules Order at 2-3, 154-69 (Dec. 13, 2016), available at https://mdcourts.gov/sites/default/files/rules/order/191ro.pdf [https://perma.cc/6UA5-JZJP].

Both before and after October 1, 2016, RP § 14-108(b) has provided that "[a]ny person who appears of record, or claims to have a hostile outstanding right, shall be made a defendant in the proceedings."  In other words, a record owner of a property is required to be joined as a defendant in an action to quiet title.  Importantly, however, the new subtitle and Maryland Rules governing actions to quiet title provide specific procedures by which a plaintiff may proceed with an action to quiet title even where there exists a person required to be joined as a defendant, *e.g.*, a record owner, who is deceased with no known personal representative.  Stated otherwise, although a record owner of a property may be deceased with no known personal representative, as of October 1, 2016, Maryland law provides a mechanism by which a plaintiff may nevertheless proceed with seeking to quiet

title to the property.  Under those circumstances, RP § 14-610(b) provides:

> (1) If a person required to be named as a defendant is dead, or is believed by the plaintiff to be dead, and the plaintiff knows of no personal representative, the plaintiff shall state those facts in an affidavit filed with the complaint.
>
> (2) If the plaintiff states in an affidavit under paragraph (1) of this subsection that a person is dead, the plaintiff may join as defendants "the testate and intestate successors of _____ (naming the deceased person), deceased, and all persons claiming by, through, or under the decedent".
>
> (3) If the plaintiff states in an affidavit under paragraph (1) of this subsection that a person is believed to be dead, the plaintiff may join the person as a defendant, and may also join "the testate and intestate successors of _____ (naming the person), believed to be deceased, and all persons claiming by, through, or under the person believed to be deceased".

Consistently, Maryland Rule 12-805(b)(2) provides: "If a person required to be named as defendant . . . is dead, or is believed by the plaintiff to be dead, and the plaintiff knows of no personal representative, the plaintiff shall state those facts in an affidavit filed with the court."  And, Maryland Rule 12-805(b)(3) provides that, where a plaintiff avers in an affidavit that a person is dead or believed to be dead, then the plaintiff "may join as defendants" the person's "testate and intestate successors" and all persons who would claim "by, through or under" the person.

Against this backdrop, we decide whether RP §§ 14-601 to 14-621 and Maryland Rules 12-801 to 12-811, all of which became effective while this case was pending in the Court of Special Appeals, apply to this case—*i.e.*, whether the new statutes and Maryland Rules apply retroactively—and, if so, whether, under the circumstances of this case, dismissal for nonjoinder of a deceased record owner who has no known personal representative is required.  We hold that RP §§ 14-601 to 14-621 and Maryland Rules 12-

- 4 -

801 to 12-811 apply retroactively to all cases that were pending when the statutes and Maryland Rules became effective, including this case, which was pending in the Court of Special Appeals. Specifically, we conclude that the new statutes and Maryland Rules apply retroactively because they govern procedures that are related to actions to quiet title and are remedial in nature, they do not impair any substantive or vested rights, and neither the General Assembly nor this Court, in enacting the new statutes and adopting the new Maryland Rules, respectively, has shown an intent to the contrary. With respect to RP §§ 14-601 to 14-621, the General Assembly did not express any intent whatsoever to limit the applicability of the statutes to actions to quiet title that were initiated after October 1, 2016. And, with respect to Maryland Rules 12-801 to 12-811, this Court's Rules Order explicitly provided for retroactive application to all pending actions, "insofar as practicable[.]" Rules Order at 3.

Additionally, we hold that, when applied to this case, the new statutes and Maryland Rules do not require dismissal for failure to join a deceased record owner who has no known personal representative. To be sure, under RP § 14-108(b), a record owner is required to be made a defendant to an action to quiet title. Automatic dismissal, however, is not required under the circumstances of this case, as the Court of Special Appeals concluded. Rather, we determine that the proper course of action is to reverse the Court of Special Appeals's judgment and remand this case to that Court with instructions to vacate the circuit court's judgment and remand this case to the circuit court for further proceedings, so that the Estate can follow the procedures that are outlined in the new statutes and Maryland Rules concerning joinder of a defendant who is a deceased record

owner with no known personal representative. In other words, on remand, the Estate would be permitted to file an amended complaint that is accompanied by the necessary affidavit that is described by RP § 14-610(b) and Maryland Rule 12-805(b).

Accordingly, we reverse the judgment of the Court of Special Appeals and remand this case to that Court with instructions to vacate the circuit court's judgment and remand this case to the circuit court for further proceedings consistent with this opinion, namely, the filing of an amended complaint to quiet title with the appropriate affidavit in accordance with the new statutes and Maryland Rules governing actions to quiet title. For purposes of the remand, we determine that there is no issue preclusion on the merits of complaint or counterclaim, and we express no opinion as to the merits of either party's claim to the Disputed Property or as to Respondents' counterclaim for trespass.[2]

## BACKGROUND

On June 4, 2014, on the Estate's behalf, Stevens filed in the circuit court a complaint against Respondents seeking to quiet title to the Disputed Property, alleging that the Estate owned the Disputed Property through adverse possession.[3] In the complaint, the Estate alleged that the Disputed Property is unimproved real property, consisting of

---

[2]Although the Estate raised eight questions in the petition for a writ of *certiorari* and on brief in this Court, because we hold that the new statutes and Maryland Rules governing actions to quiet title apply retroactively to this case and that dismissal for nonjoinder of a deceased record owner who has no known personal representative is not required, thereby answering the first two questions in the affirmative, we do not address the six other questions.

[3]The Estate initiated the action to quiet title even though, as of June 4, 2014, Stevens and George owned the Zimmerman Farm, having become the owners by deed dated January 1, 2013.

approximately six acres that were conveyed by a deed dated April 19, 1886 from Preston S. Devilbiss and Mollie L. Devilbiss, husband and wife, to Abner C. Devilbiss. The Estate alleged that the Disputed Property does not have a Maryland property tax identification number or a map/parcel number. The Estate also alleged that the Disputed Property lies between the Zimmerman Farm and the Laughlin Farm. The Estate alleged that Respondents' chain of title includes a deed dated September 16, 1908, by which Cephas M. Thomas and Milton G. Umer, as trustees, conveyed 191 acres of land to Mollie L. Devilbiss, an undivided one-third interest for her life, with the balance to Roger B. Devilbiss, Bayard Devilbiss, Hilda Devilbiss, and Preston S. Devilbiss. According to the Estate, the 1908 deed expressly excluded the Disputed Property.

In the complaint, the Estate requested that the circuit court determine, among other things, that: (1) the Estate "has actual peaceable possession of the" Disputed Property; (2) in the alternative, the Estate "is in constructive and peaceable possession of the" Disputed Property; (3) its possession of the Disputed Property is "under color of right by reason of" its and its "predecessor's adverse possession for more than the statutory period"; (4) as between the parties, the Estate "has absolute ownership of the" Disputed Property and "the right of disposition of the" Disputed Property. Accordingly, the Estate requested that the circuit court "[e]nter a decree" that, as between the parties, the Estate has "absolute ownership of[,]" "and the right of disposition of[,] the" Disputed Property.

On August 25, 2014, Respondents filed an answer to the complaint, denying that the Estate was in actual or constructive peaceable possession of the Disputed Property and that the Estate had the right to possess the Disputed Property through adverse possession.

On the same day, Respondents filed a counterclaim against the Estate, alleging that the Disputed Property "has always been regarded as a part of the" Laughlin Farm "and deemed by all parties who had involvement with either parcel to be a part of the" Laughlin Farm, including the late Charles Howard Zimmerman ("Zimmerman"). Respondents alleged that they, and previously the Laughlin family, had given permission to Zimmerman and his wife "for limited use of the" Disputed Property, but that they had "formally noted the withdrawal of their consent and license for any use of the land by the heirs of the Estate . . . by letter." Respondents requested that the circuit court issue an order prohibiting the Estate and "its agents, successors, heirs, and assigns" from trespassing onto the Disputed Property.

On September 24, 2014, the Estate filed an answer to the counterclaim denying that Respondents held title to the Disputed Property, arguing that Respondents failed to state a claim upon which relief could be granted, and asserting affirmative defenses.

On September 15 and 16, 2015, the circuit court conducted a bench trial. At the beginning of trial, the Estate's counsel attempted to clarify an issue in the case, advising the circuit court that the dispute between the parties pertained "not necessarily [to] ownership[,]" but rather concerned "the degree of possession that the [E]state has exercised over" the Disputed Property. The Estate's counsel explained that "legal ownership of the" Disputed Property "is with Abner C. Devilbiss, that the land was conveyed to him in 1886, deed recorded in the land records, and there ha[ve] been no further conveyances[.]" The Estate's counsel stated that Abner had died, and that the Disputed Property's legal owner "would be the personal representative of his granddaughter[,] but they are not a party to

th[is] case." At that point, the circuit court asked the Estate's counsel how this case could be decided and whether there was a lack of a necessary party. The Estate's counsel responded that the dispute at issue was strictly between the parties, and that the circuit court could issue a judgment in the matter, although that judgment would "not [be] good against the world" and would be "good [only] against the parties[.]" According to the Estate's counsel, the record owner would not be bound by the judgment and "would be free to re-litigate the issues." After being asked by the circuit court why the record owners were not joined as parties to the action to quiet title, the Estate's counsel responded:

> I think . . . it would have required opening at least three decedents' estates, and trying to find[ ] heirs of[ ] parties . . . one of whom has been dead for almost 120 years. The second party, I believe, died in 1958. And [] the granddaughter, I think, died in the 1970s. . . . The last decedent died after 1970, which means [that] whatever interest she had would have gone to her estate. . . . Her estate was administered in Allegany County, but there's nothing in the inventory that shows any. . . . [T]he [Disputed P]roperty has been forgotten about . . . because they thought -- you have this 160-acre farm here. And the six acres that[ are] in dispute w[ere] considered part of the whole, and, [] conveyed out. No thought was given to the fact that the later deeds did not specifically mention [the Disputed Property.]

In response, Respondents' counsel argued that the Estate's failure to join the Disputed Property's record owner rendered the circuit court unable to decide the matter. Stated otherwise, according to Respondents' counsel, the record owners were necessary parties. The circuit court advised Respondents' counsel that "[t]he want of a necessary party is a required pretrial motion[,]" and that it would treat Respondent's counsel's argument as a motion to dismiss. The circuit court recessed to review the parties' arguments and consider the matter. After a brief recess, the circuit court stated that it had reviewed the case law, and determined that it could decide the issue between the parties

and determine whether one party's claim was superior to the other party's claim, but that it could not grant title or allow conveyance of the Disputed Property in the absence of its record owner. The circuit court asked whether the parties desired to proceed with the understanding that the circuit court could decide only which party had a superior claim, and counsel for both parties responded in the affirmative. Thereafter, the trial proceeded.

At trial, to demonstrate satisfaction of the elements of adverse possession, witnesses testified on behalf of the parties concerning each party's use of the Disputed Property. And, through exhibits and witness testimony, the following pertinent evidence was adduced. Beginning in the 1950s, Zimmerman and his wife resided on what is now known as the Zimmerman Farm with their "foster child," George, and Zimmerman and George began operating the Zimmerman Farm as a dairy farm. By a deed dated September 28, 1965, Hilda Davies conveyed the Zimmerman Farm to Zimmerman and his wife, as tenants by the entireties.[4] Later, George's son, Stevens, who also grew up on the Zimmerman Farm, helped George and Zimmerman with the dairy farm. In 1999, the Zimmerman Farm ceased to operate as a dairy farm.

On December 20, 2001, Respondents purchased Laughlin Farm from John Laughlin, successor trustee of the Henry P. Laughlin Family Trust. According to Respondents, they believed that they owned the Disputed Property from the time that they purchased the Laughlin Farm.

In 2010, Zimmerman had a land survey conducted. Stevens testified that he first

---

[4]Upon the death of Zimmerman's wife on March 17, 2007, sole ownership of Zimmerman Farm automatically vested in Zimmerman.

learned that the ownership of the Disputed Property was unknown upon review of the survey results. On January 29, 2011, Zimmerman died. In a letter dated October 5, 2011, Dr. Maharaj wrote to Stevens, who was serving as the Estate's personal representative, and claimed ownership of the Disputed Property. In a letter dated January 18, 2012, Dr. Maharaj opened a claim with her title insurance company, stating that she believed that the Disputed Property was inadvertently excluded from the Laughlin Farm deed and asking who rightfully owned it. In a letter dated December 13, 2012, the title insurance company's assistant vice president and claims counsel traced the chain of title for Respondents' property and concluded that the Disputed Property was conveyed out of Respondents' chain of title through "two out-conveyances" by deeds dated March 20, 1857 and April 19, 1886. The title insurance company's vice president and claims counsel did not identify the record owner of the Disputed Property. The title insurance company ultimately determined that Respondents' "property [was] described as insured[,]" and denied Dr. Maharaj's claim.

At the conclusion of the trial, the circuit court heard closing arguments and recessed to consider the case. Thereafter, the circuit court orally ruled from the bench, denying the counterclaim and ruling that, as between the parties, the Estate had the right to possess and use the Disputed Property through adverse possession. The circuit court first addressed the counterclaim, ruling that it could not grant the relief requested, *i.e.*, a no-trespass order, in the absence of evidence that Respondents had title to the Disputed Property. As to the Estate's adverse possession claim, the circuit court summarized the evidence relating the elements of adverse possession and ruled:

And so I do find that the use of [the Disputed P]roperty meets the

criteria of adverse possession. I do find that, as between the parties, the right to possess the [Disputed Property] is with the Estate[.] That is[] by adverse possession. And that[,] henceforth, between the parties, the[ Estate] ha[s] the right of use of th[e Disputed Property].

I cannot rule that the[ Estate] ha[s] absolute ownership of the [Disputed Property.] . . . [The Estate] certainly did not prove that.

On November 2, 2015, the circuit court issued an order consistent with its oral ruling, denying the counterclaim and ordering

that[,] as between the parties to this action, the right to possession and use of the [Disputed Property], Six (6) acres, two (2) rood, and twenty-five (25) perches +/- which comprise the area of unknown ownership between the properties of the [Estate] and [Respondents], is with the Estate . . . by adverse possession.

In other words, the circuit court's ruling and subsequent order was to be ineffective against the record owner of the Disputed Property or any other person with an interest in the Disputed Property. The circuit court did not identify, either in its oral ruling or subsequent order, who the record owner of the Disputed Property is; rather, the circuit court determined only that, as between the parties, the Estate had the superior claim to the right to possess and use the Disputed Property.

On November 30, 2015, Respondents noted an appeal.[5] On June 26, 2017, the Court of Special Appeals vacated the circuit court's judgment and remanded this case to the circuit court with instructions to dismiss this case. See Erich E. Blatter, et ux. v. Estate of Charles Howard Zimmerman, No. 2146, Sept. Term, 2015, 2017 WL 2730237, at *7 (Md. Ct. Spec. App. June 26, 2017). The Court of Special Appeals determined that, although

_____

[5]For purposes of the appeal, the parties stipulated to the location and description of the Disputed Property.

- 12 -

the circuit court correctly observed that the action to quiet title lacked a necessary party, *i.e.*, the record owner of the Disputed Property, the circuit court erred in proceeding with "trial to determine which party to the action had a superior right to possess the Disputed" Property. Id. at *1. The Court of Special Appeals explained:

> The Court of Appeals'[s] interpretation of [RP § 14-108] leaves no room for doubt in this case. The record owner is [a] necessary party and must be joined to a quiet title action. [RP] § 14-108(b). Outstanding claims to a property are clouds on that property's title and prevent a court from granting the relief provided for in the quiet title action—absolute ownership and the right to dispose of the property. *Id.* The limited relief granted by the circuit court was a clear indicator that something was amiss. As the Estate admitted at trial, there was a record owner it did not name as a defendant in the action. [RP] § 14-108(b) plainly required the Estate to join the record owner. We hold, therefore, that the [circuit] court erred in conducting trial without ordering the Estate to join the record owner or any person who may "claim[] to have a hostile outstanding right" to the Disputed [Property] as a party, and we reverse the judgment of the [circuit] court with instructions to dismiss this case.

Id. at *7. As to the amendment of RP § 14-108 and the enactment of RP §§ 14-601 to 14-621, which occurred while the appeal was pending, the Court of Special Appeals noted the "substantial changes" and stated in a footnote:

> Subtitle 6 prescribes precise procedures for actions to quiet title that did not exist prior to 2016. Although Subtitle 6 [had] not [been] enacted [when] the Estate filed the quiet title action in this case, its provisions further inform and support the purpose of quiet title actions related here.

Id. at *4 n.9. Because the Court of Special Appeals determined that the Estate's failure to join a necessary party to the action to quiet title was dispositive, it did not address Respondents' arguments that the Estate had failed to meet its burden to prove adverse possession. See id. at *4 n.8.

The Estate filed a motion for reconsideration, which the Court of Special Appeals

- 13 -

denied. On September 19, 2017, the Estate filed in this Court a petition for a writ of

*certiorari*, raising the following two issues, among others:

> 1. Do new RP §§ 14-601 [to] 14-621 and new [Maryland] Rules 12-801 [to] 12-811, all of which concern quiet title actions and took effect during the pendency of this appeal, apply to this appeal?

> 2. If the answer to Question #1 is "yes", do the new procedural statutes and [Maryland R]ules eliminate any requirement in prior law that a quiet title action is subject to automatic dismissal for nonjoinder of a deceased record owner who has no personal representative?

(Cleaned up). On November 3, 2017, this Court granted the petition. See Estate of

Zimmerman, 456 Md. 251, 173 A.3d 153.

## DISCUSSION[6]

### The Parties' Contentions

The Estate contends that the new statutes and Maryland Rules governing actions to

quiet title, which took effect while this case was pending in the Court of Special Appeals,

apply to this case. According to the Estate, the changes in the law altered the procedures

concerning actions to quiet title, and did not impair any substantive or vested rights, and,

thus, the changes apply to all actions, including pending actions, unless there is an express

intent to the contrary. In other words, the Estate argues that the new statutes and Maryland

Rules governing actions to quiet title apply retroactively, even to cases pending on appeal.

The Estate points out that the Rules Order adopting the new Maryland Rules governing

---

[6]Although the Estate raised the first two issues in the petition for a writ of *certiorari* and on brief in this Court as separate issues, because both issues concern the applicability and effect of the new statutes and Maryland Rules governing actions to quiet title, we consolidate the two issues in this opinion.

actions to quiet title expressly states that the changes shall "apply to all actions [that were] commenced on or after April 1, 2017 and, insofar as practicable, to all actions [that were] then pending[,]" and that, in enacting the new statutes governing actions to quiet title, the General Assembly did not express an intent that the statutes apply only prospectively. The Estate maintains that Respondents "do not appear to have any substantive or vested rights" to the Disputed Property such that applying the new statutes and Maryland Rules would impair a right possessed by Respondents.

The Estate contends that the new statutes and Maryland Rules eliminated any requirement of automatic dismissal of an action to quiet title for nonjoinder of a deceased record owner who has no personal representative. The Estate maintains that, because the new statutes and Maryland Rules apply retroactively and eliminated any requirement of automatic dismissal for nonjoinder of a deceased record owner with no personal representative, this Court should remand this case to the Court of Special Appeals with instructions to review and decide the other questions presented by the parties in their briefs to the Court of Special Appeals.

Respondents respond that RP § 14-108 is a substantive statute, not simply a procedural or remedial statute, because it provides the authority to bring an action to quiet title, and that the new statutes governing actions to quiet title "were enacted to promote consistent procedures in" actions to quiet title. Respondents contend that the new statutes and Maryland Rules did not nullify RP § 14-108(b)'s requirement that all record title owners be joined as parties in an action to quiet title. Respondents acknowledge that the new Maryland Rules apply to pending actions if practicable, but argue that it would have

been impracticable to apply them after trial and on appeal, as in this case. Stated otherwise, Respondents assert that an appeal is too late a stage to facilitate adding new parties, such as a deceased record owner. Respondents maintain that, in any event, had the Court of Special Appeals applied the new statutes and Maryland Rules to this case, that application would not have excused the Estate's failure to name the necessary parties in the action to quiet title.

Respondents contend that the Court of Special Appeals correctly instructed the circuit court to dismiss this case for failure to join necessary parties because, given the circumstances, "there is no realistic option but to require the Estate to start anew" so that the Estate can comply with the law. Respondents argue that a remand to allow the Estate to amend its complaint to add the record owners as defendants in the action to quiet title, after a trial on the merits has occurred on certain issues between the parties, would create several procedural problems, including an issue as to whether Respondents have the right to litigate their claim to the Disputed Property once the record owners are joined.

**Standard of Review**

Maryland Rule 8-131(c) governs review of a bench trial and provides:

> When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

In Bottini v. Dep't of Fin., 450 Md. 177, 187, 147 A.3d 371, 377 (2017), we explained the standard of review applicable under Maryland Rule 8-131(c):

> We give due regard to the trial court's role as fact-finder[,] and will not set

aside factual findings unless they are clearly erroneous. The appellate court must consider evidence [that is] produced at the trial in a light most favorable to the prevailing party[,] and[,] if substantial evidence was presented to support the trial court's determination, it is not clearly erroneous[,] and cannot be disturbed. Questions of law, however, require our non-deferential review. When the trial court's decision involves an interpretation and application of Maryland statutory and case law, [this] Court must determine whether the trial court's conclusions are legally correct. Where a case involves both issues of fact and questions of law, this Court will apply the appropriate standard to each issue.

(Cleaned up).

## Actions to Quiet Title

In 1955, the General Assembly enacted RP § 14-108's earliest predecessor, Md. Code, Art. 16 (1951, 1955 Supp.) § 131A. See 1955 Md. Laws 640-41 (Ch. 376, H.B. 504). In 1972, the General Assembly recodified Md. Code, Art. 16 (1957, 1966 Supp.) § 131A as Md. Code, Art. 21 (1957, 1966 Repl. Vol., 1972 Supp.) § 14-108. See 1972 Md. Laws 1010, 1112-13 (Ch. 349, H.B. 439). And, in 1974, the General Assembly recodified Md. Code, Art. 21 (1957, 1973 Repl. Vol.) § 14-108 as Md. Code Ann., Real Prop. (1974) § 14-108, which was identical to RP (2015) § 14-108. See 1974 Md. Laws 248-49, 459-60 (Ch. 12, S.B. 200). From the time of its recodification in 1974 until its amendment in 2016—including when the Estate filed the action to quiet title—the statute that eventually became RP (2015) § 14-108 provided as follows:

(a) Any person in actual peaceable possession of property, or, if the property is vacant and unoccupied, in constructive and peaceable possession of it, either under color of title or claim of right by reason of his or his predecessor's adverse possession for the statutory period, when his title to the property is denied or disputed, or when any other person claims, of record or otherwise to own the property, or any part of it, or to hold any lien encumbrance on it, regardless of whether or not the hostile outstanding claim is being actively asserted, and if an action at law or proceeding in equity is

- 17 -

not pending to enforce or test the validity of the title, lien, encumbrance, or other adverse claim, the person may maintain a suit in equity in the county where the property lies to quiet or remove any cloud from the title, or determine any adverse claim.

(b) The proceeding shall be deemed in rem or quasi in rem so long as the only relief sought is a decree that the plaintiff has absolute ownership and the right of disposition of the property, and an injunction against the assertion by the person named as the party defendant, of his claim by any action at law or otherwise.  Any person who appears of record, or claims to have a hostile outstanding right, shall be made a defendant in the proceedings.

Id. at 459-60.  No other statutes or Maryland Rules specifically governed actions to quiet title or set forth procedures relating to actions to quiet title.

Effective on October 1, 2016, through House Bill 920, the General Assembly amended RP (2015) § 14-108 and added a new subtitle governing actions to quiet title to the Real Property Article—RP §§ 14-601 to 14-621.  See 2016 Md. Laws 5703-04, 5711 (Vol. VII, Ch. 396, H.B. 920).  The purpose paragraph of House Bill 920 states that it was to

authoriz[e] a certain action to be brought to establish title against adverse claims to property; establish[] that the court is deemed to have possession and control for the purpose of an action under this Act; provid[e] for the venue and application of certain rules in an action under this Act; establish[] requirements for a complaint, an answer to a complaint, naming of defendants, joinder of parties, and service of process in an action under this Act; authoriz[e] the court to take certain actions in an action under this Act; requir[e] the recording of a certain judgment; provid[e] for the effect of a judgment in an action under this Act; provid[e] for the construction of this Act; mak[e] stylistic changes; defin[e] certain terms; and generally relat[e] to actions to quiet title.

Id. at 5703 (cleaned up).  House Bill 920 was to "take effect October 1, 2016[,]" id. at 5711, during which this case was pending in the Court of Special Appeals.

House Bill 920's bill file provides additional information concerning the

amendment of RP (2015) § 14-108 and the enactment of the new subtitle governing actions to quiet title. In particular, House Bill 920's Fiscal and Policy Note stated that House Bill 920 "establishes rules of practice and procedures for actions to 'quiet' title (that is, to determine the validity of adverse claims or other clouds on title) to real property and requires an action to quiet title under existing law to be maintained in accordance with the bill's provisions." H.B. 920, 2016 Leg., Reg. Sess. (Md. 2016), Fiscal and Policy Note at 1, http://mgaleg.maryland.gov/2016RS/fnotes/bil_0000/hb0920.pdf [https://perma.cc/M7M5-E9HU]. As to the "Current Law/Background" governing actions to quiet title and the impetus behind House Bill 920, the Fiscal and Policy Note stated, in pertinent part:

> The purpose of an action to quiet title is to determine conflicting claims to real property or remove a cloud on title to property. However, State law does not specify the procedures to be followed in an action to quiet title.
>
> . . . Any person who appears on record, or claims to have a hostile outstanding right, must be made a defendant in the proceedings.
>
> The Maryland Land Title Association reports that its members are seeing inconsistent processes used from case to case and county to county. In addition, because of the uncertainty concerning the process under existing laws, title insurance underwriters may refuse to insure the title of a person who has brought an action to quiet title.

Id. at 4-5.

The Fiscal and Policy Note also included a summary of House Bill 920. See id. at 1-4. In relevant part, as to parties to an action to quiet title, the Fiscal and Policy Note summarized House Bill 920's provisions as follows:

> The plaintiff must name as defendants the persons having adverse claims to the title of the plaintiff that are of record or known to the plaintiff or reasonably apparent from an inspection of the property against which a determination is sought. . . .

> If a person required to be named as a defendant is dead the plaintiff knows of a personal representative, the personal representative must be joined as a defendant. If a person required to be named as a defendant is dead, or is believed by the plaintiff to be dead, and the plaintiff knows of no personal representative, the plaintiff must state those facts in an affidavit filed with the complaint. The bill specifies how persons who are unknown, dead, or believed to be dead must be named in a complaint.
>
> The court on its own motion, or on motion of any party, may issue any appropriate order to join any additional parties to the action that are necessary and proper. Any person who has a claim to the property described in a complaint may appear in the proceeding.

Id. at 2-3. The Fiscal and Policy Note also observed that, under House Bill 920, a trial court is required to order service by publication and mailing where a plaintiff demonstrates by affidavit, "to the [trial] court's satisfaction[,] that the plaintiff has used reasonable diligence to ascertain the identity and residence of and to serve a summons on the persons named as unknown defendants and persons joined as testate or intestate successors of a person known or believed to be dead." Id. at 3.

The existing statutory language of RP (2015) § 14-108 was changed under House Bill 920 to include stylistic improvements, such as replacing the word "his" with "the person" or "the person's," and to add a reference to the new subtitle governing actions to quiet title, such that the end of RP § 14-108(a) now provides that "the person may maintain a suit in accordance with Subtitle 6 of this title in the circuit court for the county where the property or any part of the property is located to quiet or remove any cloud from the title, or determine any adverse claim." 2016 Md. Laws 5704 (Vol. VII, Ch. 396, H.B. 920). Like its predecessors, RP § 14-108(b) provides that "[a]ny person who appears of record, or claims to have a hostile outstanding right, shall be made a defendant in the

proceedings." Id. In its entirety, RP § 14-108 provides as follows:

(a) Any person in actual peaceable possession of property, or, if the property is vacant and unoccupied, in constructive and peaceable possession of it, either under color of title or claim of right by reason of the person or the person's predecessor's adverse possession for the statutory period, when the person's title to the property is denied or disputed, or when any other person claims, of record or otherwise to own the property, or any part of it, or to hold any lien encumbrance on it, regardless of whether or not the hostile outstanding claim is being actively asserted, and if an action at law or proceeding in equity is not pending to enforce or test the validity of the title, lien, encumbrance, or other adverse claim, the person may maintain a suit in accordance with Subtitle 6 of this title in the circuit court for the county where the property or any part of the property is located to quiet or remove any cloud from the title, or determine any adverse claim.

(b) The proceeding shall be deemed in rem or quasi in rem so long as the only relief sought is a decree that the plaintiff has absolute ownership and the right of disposition of the property, and an injunction against the assertion by the person named as the party defendant, of the person's claim by any action at law or otherwise. Any person who appears of record, or claims to have a hostile outstanding right, shall be made a defendant in the proceedings.

And, in relevant part, RP §§ 14-601 to 14-621 set forth general procedures governing actions to quiet title and provides specific procedures by which a plaintiff may file an action to quiet title and join all necessary defendants, despite the existence of a defendant who is not known to the plaintiff or a deceased defendant, whether or not that deceased defendant has a personal representative. For example, as to general procedures governing actions to quiet title, RP § 14-606 requires that a complaint to quiet title be verified and include certain information, including "[a] description of the property that is the subject of the action, including both its legal description and its street address or common designation, if any[,]" as well as "[t]he title of the plaintiff as to which a determination is sought and the basis of the title[,] and [i]f the title is based on adverse

- 21 -

possession, the specific facts constituting the adverse possession[.]"  RP § 14-606(1), (2).

Likewise, RP § 14-607 provides that an answer to a complaint to quiet title must be verified

and include three specific items, including "[a]ny claim the defendant has to the property

that is the subject of the action[.]"  RP § 14-607(a)(1).

As to the defendants in an action to quiet title, RP § 14-608(a) sets forth who must

be joined as a defendant in an action to quiet title, stating that "[t]he plaintiff shall name as

defendants in an action under this subtitle the persons having adverse claims to the title of

the plaintiff that are of record or known to the plaintiff or reasonably apparent from an

inspection of the property against which a determination is sought."  If, however, there

exists an unknown defendant, RP § 14-609(a) provides: "If the name of a person required

to be named as a defendant is not known to the plaintiff, the plaintiff shall state in the

complaint that the name is unknown and shall name as parties all persons [who are]

unknown in the manner provided in [RP] § 14-613[.]"  RP § 14-609(b) sets forth additional

information that must be included in a complaint where a defendant is unknown, providing:

> (1) If the claim or the share or quantity of the claim of a person required to be named as a defendant is unknown, uncertain, or contingent, the plaintiff shall state those facts in the complaint.
>
> (2) If the lack of knowledge, uncertainty, or contingency is caused by a transfer to an unborn or unascertained person or class member, or by a transfer in the form of a contingent remainder, vested remainder subject to defeasance, executory interest, or similar disposition, the plaintiff shall also state in the complaint, so far as is known to the plaintiff, the name, age, and legal disability, if any, of the person in being who would be entitled to the claim had the contingency on which the claim depends occurred before the commencement of the action.

RP § 14-613, which RP § 14-609(a) references, sets forth the manner in which an unknown

defendant is to be identified in a complaint to quiet title, providing:

> In addition to the persons required to be named as defendants in an action under this subtitle, the plaintiff may name as defendants "all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to the plaintiff's title, or any cloud on the plaintiff's title to the property."

As to a deceased defendant, as opposed to an unknown defendant, RP § 14-610(a) provides that, where "a person required to be named as a defendant is dead[,] and the plaintiff knows of a personal representative, the plaintiff shall join the personal representative as a defendant." By contrast, where a defendant is deceased, or believed to be deceased, and there is no known personal representative, RP § 14-610(b) provides:

> (1) If a person required to be named as a defendant is dead, or is believed by the plaintiff to be dead, and the plaintiff knows of no personal representative, the plaintiff shall state those facts in an affidavit filed with the complaint.
>
> (2) If the plaintiff states in an affidavit under paragraph (1) of this subsection that a person is dead, the plaintiff may join as defendants "the testate and intestate successors of _____ (naming the deceased person), deceased, and all persons claiming by, through, or under the decedent".
>
> (3) If the plaintiff states in an affidavit under paragraph (1) of this subsection that a person is believed to be dead, the plaintiff may join the person as a defendant, and may also join "the testate and intestate successors of _____ (naming the person), believed to be deceased, and all persons claiming by, through, or under the person believed to be deceased".

And, generally, as to joinder of additional parties, RP § 14-611(1) provides that the trial "court[,] on its own motion or on motion of any party[,] may issue any appropriate order to require . . . [j]oinder of any additional parties that are necessary or proper[.]" (Paragraph break omitted).

With respect to service on unknown and deceased defendants, RP § 14-615(a)(1)

- 23 -

provides:

> If, on affidavit of the plaintiff, it appears to the satisfaction of the court that the plaintiff has used reasonable diligence to ascertain the identity and residence of and to serve a summons on the persons named as unknown defendants and persons joined as testate or intestate successors of a person known or believed to be dead, the court shall order service by publication in accordance with Rule 2-122 of the Maryland Rules and the provisions of this subtitle.

RP § 14-616(a) sets forth additional actions that a plaintiff must take if the trial court orders service by publication, including "fil[ing] proof that the summons has been served, posted, and published as required in the order[,]" RP § 14-616(a)(2), and RP § 14-616(b) requires that the publication "use the legal description of the property along with its street address, or other common designation, if any."

With respect to judgments in actions to quiet title, RP § 14-617(b)(1) requires that a judgment "be recorded in the land records of the county in which any portion of the property is located[,]" and RP § 14-617(b)(2) requires the clerk of the court to index the judgment in a certain manner, "with the parties against whom the judgment is entered as grantor and the party in whose favor the judgment is entered as grantee."

Shortly after the new subtitle became effective, on October 13, 2016, in its One Hundred Ninety-First Report, the Standing Committee on Rules of Practice and Procedure ("the Rules Committee") proposed adding a new chapter to the Maryland Rules to govern actions to quiet title. See Rules Committee, One Hundred Ninety-First Report at 3, 16 (Oct. 13, 2016), available at https://mdcourts.gov/sites/default/files/rules/reports/191st.pdf [https://perma.cc/49KK-9DAH]. In his cover letter to this Court, the Chair of the Rules Committee explained:

Category 10 consists of a new Chapter 800 to Title 12 (Rules 12-801 through 12-811), dealing with actions to quiet title to property, and a conforming amendment to Rule 1-101. Such actions have been authorized for many years by [RP] § 14-108, but no Rules were adopted to set forth the procedures for prosecuting them, and the Maryland Land Title Association reported that inconsistent procedures were being used in the various counties. The [General Assembly] responded by enacting [RP] §§[ ]14-601 through 14-621[]. The new statute[s] set[] forth uniform requirements and procedures for such actions, but the [Rules] Committee is of the view that a set of Rules to implement the statute would be useful.

Id. at 16. On December 13, 2016, this Court adopted Maryland Rules 12-801 to 12-811 as a new chapter governing actions to quiet title. See Rules Order at 2. This Court's Rules Order provided "that the rules changes hereby adopted . . . shall take effect and apply to all actions [that were] commenced on or after April 1, 2017 and, insofar as practicable, to all actions [that were] then pending[.]" Id. at 3.

The new Maryland Rules set forth procedures related to actions to quiet title that correspond to RP §§ 14-601 to 14-621. For example, Maryland Rule 12-804 requires that a complaint to quiet title "shall be signed and verified by the plaintiff and shall contain[,]" at a minimum, information related to ten items. In relevant part, Maryland Rule 12-804 mandates that a complaint to quiet title "shall contain":

> (d) the names of all persons having adverse claims to the title of the plaintiff that are of record, known to the plaintiff, or reasonably apparent from an inspection of the property;
>
> . . .
>
> (g) if the name of a person required to be named as a defendant is not known to the plaintiff, a statement that the name is unknown and, if applicable, a statement that there are persons unknown to the plaintiff who may (1) have a legal or equitable interest in the property or (2) assert that there may be a cloud on plaintiff's title[.]

Similarly, Maryland Rule 12-809(a) states that an answer to a complaint to quiet title "shall be verified and shall set forth" certain information. As to joinder of additional parties, Maryland Rule 12-805(a) provides that a trial "court on its own motion or on motion of any party may issue any appropriate order to require joinder of any additional parties that are necessary or proper."

With respect to a deceased defendant with a known personal representative, Maryland Rule 12-805(b)(1) provides: "If a person required to be named as a defendant pursuant to Rule 12-804(d) is dead or is believed by the plaintiff to be dead, and the plaintiff knows of a personal representative, the plaintiff shall join the personal representative as a defendant." By contrast, where a defendant is deceased and there is no known personal representative, Maryland Rule 12-805(b)(2) provides: "If a person required to be named as defendant pursuant to Rule 12-804(d) is dead, or is believed by the plaintiff to be dead, and the plaintiff knows of no personal representative, the plaintiff shall state those facts in an affidavit filed with the court." Under that circumstance, Maryland Rule 12-805(b)(3) provides that, where a plaintiff avers in an affidavit under Maryland Rule 12-805(b)(2) that a person is dead or believed to be dead, then the plaintiff "may join as defendants" the person's "testate and intestate successors" and all persons who would claim "by, through or under" the person.

Maryland Rule 12-806 provides that, upon motion of a party or on its own motion, a trial court may order "appointment of an attorney to protect the interest . . . of any party whose identity or whereabouts is unknown." Maryland Rule 12-808(b)(1) concerns service by publication, and requires a trial court to order service by publication,

- 26 -

> [i]f, on affidavit of the plaintiff, it appears to the satisfaction of the court that the plaintiff has used reasonable diligence to ascertain the identity and residence of the persons named as unknown defendants and persons joined as testate or intestate successors of a person known or believed to be dead[.]

As to judgments in actions to quiet title, Maryland Rule 12-811(a) requires that the prevailing party record the judgment "in the land records of the counties in which any portion of the property is located." And, Maryland Rule 12-811(b) requires the clerk of the court to index the judgment in a certain manner, "with the parties against whom the judgment is entered as grantor, and the party in whose favor the judgment is entered as grantee." In sum, like new statutes governing actions to quiet title, the new Maryland Rules set forth procedures concerning actions to quiet title, and provide a specific mechanism through which a plaintiff may proceed with seeking to quiet title to property, even where there is a deceased defendant with no known personal representative.

### Retroactive Application Versus Prospective Application

As to whether a statute applies retroactively or prospectively, in <u>Langston v. Riffe</u>, 359 Md. 396, 406, 754 A.2d 389, 394 (2000), this Court stated that the question is "ordinarily [] one of legislative intent[,]" and, "[i]n determining such intent . . . , there is a general presumption in the law that a[ statute] is intended to have purely prospective effect. In the absence of clear legislative intent to the contrary, a statute is not given retro[a]ctive effect." (Cleaned up). Nonetheless, this Court has "long adhered to four principles" concerning retroactivity of statutes:

> (1) statutes are presumed to operate prospectively unless a contrary intent appears; (2) a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective; (3) a statute will be given retroactive effect if that is the legislative intent; but (4) even if intended

to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws.

Pautsch v. Md. Real Estate Comm'n, 423 Md. 229, 263, 31 A.3d 489, 509 (2011) (citations omitted). This Court has distilled the following two-part test from those four principles: (1) "we must determine whether the [General Assembly] intended the statute to have the kind of retroactive effect that is asserted"; and (2) "[i]f we conclude that the [General Assembly] *did* intend for the statute to have retroactive effect, we must then examine whether such effect would contravene some Constitutional right or prohibition." Id. at 263-64, 31 A.3d at 510 (emphasis in original) (citation omitted).

Although statutes are presumed to apply prospectively, there are two exceptions to that presumption, namely: (1) statutes "that apply to procedural changes[,]" because "a statute effecting a change in procedure only, and not in substantive rights, ordinarily applies to all actions[,] whether accrued, pending[,] or future, unless a contrary intention is expressed[,]" Langston, 359 Md. at 406-07, 754 A.2d at 394 (cleaned up); and (2) statutes "that have remedial effect and do not impair vested rights[,]" Gregg v. State, 409 Md. 698, 715, 976 A.2d 999, 1008 (2009) (citation omitted). In Langston, 359 Md. at 419, 754 A.2d at 401, we explained that "a law is substantive if it creates rights, duties[,] and obligations, while a remedial or procedural law simply prescribes the methods of enforcement of those rights." (Cleaned up). As to the first exception, *i.e.*, a statute effecting a change in procedure only, this Court has stated:

> [W]here the effect of [a] new statute is not to impair existing substantive rights, but only to alter the procedural machinery involved in the enforcement of those rights, or the remedies available to enforce them, such legislation is

usually construed as operating on all proceedings instituted after its passage, whether the right occurred before or after that date.

Id. at 419, 754 A.2d at 401. As to the second exception, *i.e.*, where a statute is remedial and does not impair vested rights, in Langston, id. at 408-09, 754 A.2d at 395-96, we explained:

Generally, remedial statutes are those [that] provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries. They also include statutes intended for the correction of defects, mistakes[,] and omissions in the civil institutions and the administration of the [S]tate. The definition of a remedial statute has also been stated as a statute that relates to practice, procedure, or remedies and does not affect substantive or vested rights.

. . .

[A]n act is remedial in nature when it provides only for a new method of enforcement of a preexisting right. Under Maryland law, statutes are remedial in nature if they are designed to correct existing law, to redress existing grievances[,] and to introduce regulations conducive to the public good.

(Cleaned up).

Importantly, even if a statute is procedural or remedial, "this does not completely address whether th[e] statute may be applied retroactively. Generally, a remedial or procedural statute may not be applied retroactively if it will interfere with vested or substantive rights." Id. at 418, 754 A.2d at 400; see also Rawlings v. Rawlings, 362 Md. 535, 559-60, 766 A.2d 98, 112 (2001) ("[I]n the final part of a retroactivity analysis, a court must determine whether the retroactive application of the statute . . . would interfere with vested rights." (Cleaned up)). A vested right is "simply a right [that,] under particular circumstances[,] will be protected from legislative interference. . . . [A] vested right is an immediate right of present enjoyment or a present fixed right of future

- 29 -

enjoyment." Langston, 359 Md. at 420, 754 A.2d at 401 (citations omitted).[7]

As stated above, where a statute is determined to effect only changes to procedures or remedies, and thus is to be applied retroactively, such a statute "ordinarily applies to all actions[,] whether accrued, pending[,] or future, unless a contrary intention is expressed[.]" Langston, 359 Md. at 407, 754 A.2d at 394 (cleaned up). Indeed, one of the four principles governing a retroactivity analysis is that "a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective[.]" Pautsch, 423 Md. at 263, 31 A.3d at 509 (citation omitted). This Court has indicated that retroactive application extends even to cases that are pending on appeal. For example, in McHale v. DCW Dutchship Island, LLC, 415 Md. 145, 161, 999 A.2d 969, 978 (2010), in summarizing a prior case, we stated:

> Maryland has consistently followed the rule that an appellate court is bound to decide a case according to existing laws, even though a judgment [that was] rightful when rendered by the [trial] court [] should be reversed as a consequence. An appellate court will apply a change in the law after a [trial court's] decision unless vested or accrued substantive rights would be disturbed[,] or unless the [General Assembly] shows a contrary intent.

(Cleaned up).[8]

---

[7] The same retroactivity analysis applies to changes in the Maryland Rules. See Langston, 359 Md. at 407, 754 A.2d at 394 ("Ordinarily[,] a change affecting procedure only, and not substantive rights, made by statute (and an amendment of the Maryland Rules has essentially the same effect) applies to all actions and matters[,] whether accrued, pending[,] or future, unless a contrary intention is expressed." (Cleaned up)).

[8] Although not relevant to the issues in this case, in McHale, 415 Md. at 161, 999 A.2d at 978, we stated that, "[w]here the change in the law during the pendency of [] zoning or land use litigation works only a procedural change to the law, we will not construe that law as applying retro[a]ctively to the case before the Court." (Citation omitted).

## Analysis

Here, we hold that RP §§ 14-601 to 14-621 and Maryland Rules 12-801 to 12-811 apply retroactively to all cases that were pending when the statutes and Maryland Rules became effective, including this case, which was pending in the Court of Special Appeals. Specifically, we conclude that the new statutes and Maryland Rules apply retroactively because they govern procedures that are related to actions to quiet title and are remedial in nature, they do not impair any substantive or vested rights, and neither the General Assembly nor this Court, in enacting the new statutes and adopting the new Maryland Rules, respectively, has shown a contrary intent. With respect to RP §§ 14-601 to 14-621, the General Assembly did not express any intent to limit the applicability of the statutes to actions to quiet title that were initiated after October 1, 2016. And, with respect to Maryland Rules 12-801 to 12-811, this Court's Rules Order explicitly provided for retroactive application, stating "that the rules changes hereby adopted . . . shall take effect and apply to all actions [that were] commenced on or after April 1, 2017 and, insofar as practicable, to all actions [that were] then pending[.]" Rules Order at 3.

Additionally, we hold that, when applied to this case, the new statutes and Maryland Rules do not require dismissal for the failure to join a deceased record owner who has no known personal representative. To be sure, under RP § 14-108(b), a record owner is required to be made a defendant to an action to quiet title. Nevertheless, under the circumstances of this case, dismissal is not automatically required; rather, we determine that the proper course of action is to reverse the Court of Special Appeals's judgment and remand this case to that Court with instructions to vacate the circuit court's judgment and

remand this case to the circuit court for further proceedings, so that the Estate can follow the procedures that are outlined in the new statutes and Maryland Rules concerning joinder of a defendant who is a deceased record owner with no known personal representative. In other words, on remand, the Estate would be permitted to file an amended complaint that is accompanied by the necessary affidavit described in RP § 14-610(b) and Maryland Rule 12-805(b).

As an initial matter, we conclude that the circuit court improperly proceeded with trial in the absence of joinder of a necessary party, *i.e.*, the record owner of the Disputed Property, and with making a determination as to who, between the parties, had the right to possess and use the Disputed Property without the record owner of the Disputed Property being joined as a defendant. Under RP § 14-108(b) and its predecessors, "[a]ny person who appears of record, or claims to have a hostile outstanding right, shall be made a defendant in the proceedings[ to quiet title]." Simply put, a record owner of property that is subject to an action to quiet title is a necessary party, and must be joined as a defendant to the action. Indeed, in Jenkins v. City of College Park, 379 Md. 142, 157, 840 A.2d 139, 147 (2003), this Court expressly stated that RP § 14-108(b)'s predecessor "clearly mandate[d] that, in pursuing an *in rem* proceeding to quiet title, a plaintiff *shall* name *all* persons identified by the land records as having an interest in the property or otherwise claiming an interest in the property in question." (Emphasis in original). This is obviously so because any outstanding claims to a property, such as those that a record owner who is not a defendant may have, are clouds on the property's title that would prevent a trial court from granting the relief that is afforded by RP § 14-108(b)—namely, "a decree that the

plaintiff has absolute ownership and the right of disposition of the property[.]" It is undisputed in this case that the Estate did not name and join the Disputed Property's record owner as a defendant in the action to quiet title, although RP (2015) § 14-108(b) clearly required that the Estate do so. Thus, in this regard, we agree with the Court of Special Appeals that the circuit court should not have proceeded with a bench trial under the circumstances of this case.

We disagree, however, that reversing the circuit court's judgment and remanding this case to the circuit court with instructions to dismiss the case is the correct disposition of the case. Instead, we hold that RP §§ 14-601 to 14-621 and Maryland Rules 12-801 to 12-811 apply retroactively to all cases that were pending when the new statutes and Maryland Rules became effective, including to this case, which was pending in the Court of Special Appeals when the new statutes and Maryland Rules became effective. In determining whether a statute or Maryland Rule applies retroactively or prospectively, we begin with the general presumption that a statute "is intended to have purely prospective effect[,]" and that, "[i]n the absence of clear legislative intent to the contrary, a statute is not given retro[a]ctive effect." Langston, 359 Md. at 406, 754 A.2d at 394 (cleaned up). On the other hand, statutes and Maryland Rules that are procedural or remedial in nature, and do not impair substantive or vested rights, are exceptions to the presumption of prospective application, and ordinarily apply retroactively. See id. at 406-07, 754 A.2d at 394; Gregg, 409 Md. at 715, 976 A.2d at 1008.

Here, it is evident that the new statutes and Maryland Rules governing actions to quiet title are procedural and remedial in nature—*i.e.*, that they fall within the exceptions

- 33 -

to the presumption of prospective application, and that the new statutes and Maryland Rules do not impair any substantive or vested rights, and thus apply retroactively.[9] Indeed, RP §§ 14-601 to 14-621 and Maryland Rules 12-801 to 12-811 clearly establish procedures and rules of practice that are related to actions to quiet title, and are not substantive in nature. Among other things, the new statutes and Maryland Rules institute procedures that are related to the filing of a complaint to quiet title and an answer, requiring that a complaint and answer be verified and contain certain information. See RP § 14-606 (complaint); RP § 14-607(a) (answer); Md. R. 12-804 (complaint); Md. R. 12-809(a) (answer). The new statutes and Maryland Rules also set forth procedures that relate to joining unknown defendants. See RP § 14-609(a) (statement of unknown defendant in complaint); RP § 14-609(b) (information to be included in a complaint concerning an unknown defendant); RP § 14-613 (manner of identifying unknown defendant in a complaint); Md. R. 12-804(g) (statement of unknown defendant in complaint).

Especially significant to this case, the new statutes and Maryland Rules prescribe specific procedures by which a plaintiff may file an action to quiet title and include all necessary defendants, despite the existence of a defendant who is not known to the plaintiff or a deceased defendant, whether that deceased defendant has a personal representative. See RP § 14-610(a) (procedure concerning deceased defendant with known personal representative); RP § 14-610(b) (procedures concerning deceased defendant, or

---

[9]It is worth noting that, on brief, Respondents characterize the new statutes and Maryland Rules as being "enacted to promote consistent procedures in" actions to quiet title, as clarifying the "appropriate procedures to include necessary parties in" actions to quiet title, and as being "new remedial/procedural [statute]s and [Maryland] Rules[.]"

defendant who is believed to be deceased, with no known personal representative); Md. R. 12-805(b)(1) (procedure concerning deceased defendant, or defendant who is believed to be deceased, with known personal representative); Md. R. 12-805(b)(2) and (b)(3) (procedures concerning deceased defendant, or defendant who is believed to be deceased, with no known personal representative).

The new statutes and Maryland Rules introduce procedures that are related to service by publication on unknown and deceased defendants. <u>See</u> RP § 14-615(a) (providing for service by publication on unknown and deceased defendants and requiring a plaintiff to, among other things, file proof that the summons has been served, posted, and published as ordered); RP § 14-616(b) (requiring a publication to "use the legal description of the property along with its street address, or other common designation, if any"); Md. R. 12-808(b) (providing for service by publication on unknown and deceased defendants). And, the new statutes and Maryland Rules set forth procedures that are related to judgments in actions to quiet title. <u>See</u> RP § 14-617(b)(1) (requiring a judgment to "be recorded in the land records of the county in which any portion of the property is located"); RP § 14-617(b)(2) (requiring the clerk of court to index the judgment in a certain manner); Md. R. 12-811(a) (requiring the prevailing party to record the judgment "in the land records of the counties in which any portion of the property is located"); Md. R. 12-811(b) (requiring the clerk of the court to index the judgment in a certain manner).

In sum, a review of the new statutes and Maryland Rules confirms that they establish uniform procedures and rules of practice concerning actions to quiet title, *i.e.*, that they effect a change in procedure only. These procedures govern the process by which plaintiffs

- 35 -

file an action to quiet title and join all necessary defendants, and relate generally to the filing and adjudication of actions to quiet title.  Additionally, the new statutes and Maryland Rules do not substantively change the law with respect to the ability to quiet title, or otherwise create or alter a substantive right with respect to actions to quiet title.  The ability and right to seek to quiet title, *i.e.*, a substantive right, has long been provided for in RP § 14-108 and its predecessors, and nothing in the new statutes or Maryland Rules disturbs that right.  Indeed, rather than creating a new right or obligation as to the ability to quiet title, the new statutes and Maryland Rules effect a change only in procedure by establishing, for the first time, uniform procedures and rules of practice that relate to actions to quiet title.  As such, because RP §§ 14-601 to 14-621 and Maryland Rules 12-801 to 12-811 "effect[] a change in procedure only, and not in substantive rights," we apply the new statutes and Maryland Rules "to all actions whether[,] accrued, pending[,] or future, unless a contrary intent is expressed."  Langston, 359 Md. at 407, 754 A.2d at 394 (cleaned up).

Additionally, we conclude that RP §§ 14-601 to 14-621 and Maryland Rules 12-801 to 12-811 are remedial in nature, in that they "improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries" and generally "relate[] to practice, procedure, or remedies[.]"  Langston, 359 Md. at 408-09, 754 A.2d at 395 (cleaned up).  The remedy of quieting title obviously existed long before the new statutes and Maryland Rules became effective, as provided by RP § 14-108 and its predecessors.  The new statutes and Maryland Rules, however, improve and facilitate the process by which a plaintiff seeks to quiet title by establishing uniform rules of practice and procedure

governing actions to quiet title and standardizing existing law concerning actions to quiet title across the State. Thus, the new statutes and Maryland Rules have a remedial effect, and fall under the exception to the presumption of prospective application. See Gregg, 409 Md. at 715, 976 A.2d at 1008.

Although we conclude that RP §§ 14-601 to 14-621 and Maryland Rules 12-801 to 12-811 are procedural and remedial, and, thus, ordinarily would apply retroactively under the exceptions to the presumption of prospective application, our retroactivity analysis is not complete until we determine whether the new statutes and Maryland Rules "interfere with vested or substantive rights." Langston, 359 Md. at 418, 754 A.2d at 400. As to that point, we determine that the new statutes and Maryland Rules do not impair or interfere with any vested or substantive rights. Indeed, we are unable to discern any vested or substantive rights that are impacted by the new statutes and Maryland Rules, and we conclude that Respondents, as defendants to the action to quiet title, do not have any vested rights at stake in this case that are impaired as a result of the new statutes and Maryland Rules. Simply put, the new statutes and Maryland Rules governing actions to quiet title do not make it possible for individuals to do something that they could not do before, or prevent individuals from doing something that they could do before. As to substantive rights specifically, the new statutes and Maryland Rules do not grant any new right to either a plaintiff or a defendant in an action to quiet title. Rather, the new statutes and Maryland Rules simply provide methods or procedures by which an action to quiet title is initiated and adjudicated.

Having concluded that RP §§ 14-601 to 14-621 and Maryland Rules 12-801 to 12-

811 are procedural and remedial and do not interfere with any substantive or vested rights, and that, accordingly, the new statutes and Maryland Rules are to be applied retroactively to all cases that were pending in court as of the effective dates, our retroactivity analysis could end at this point. Nonetheless, we observe that, even when analyzed in accordance with the two-part test concerning retroactivity of statutes—and not under one of the exceptions to the presumption of prospective application—the presumption of prospective application is also readily overcome by the clear intent that the new statutes and Maryland Rules governing actions to quiet title be procedural and remedial in nature and apply retroactively, and that retroactive application does not contravene any Constitutional right or prohibition. See Pautsch, 423 Md. at 263-64, 31 A.3d at 510. We address each point in turn.

With respect to an intent to apply retroactively, we note that nothing in the language of RP §§ 14-601 to 14-621 indicates one way or the other the General Assembly's intent. Thus, we look to the legislative history of the new statutes, in particular, House Bill 920. A review of House Bill 920 demonstrates the General Assembly's clear legislative intent that the new statutes be procedural and remedial, and thus apply retroactively. House Bill 920's purpose clause provided that House Bill 920 was to, among other things, "provid[e] for the venue and application of certain rules in an action under this Act; [and] establish[] requirements for a complaint, an answer to a complaint, naming of defendants, joinder of parties, and service of process in an action under this Act[.]" 2016 Md. Laws 5703 (Vol. VII, Ch. 396, H.B. 920).

And, significantly, House Bill 920's Fiscal and Policy Note is replete with

information that clearly demonstrates that the purposes of the new statutes are to establish procedures and uniform processes to be followed in actions to quiet title. For example, at the outset, the Fiscal and Policy Note stated that House Bill 920 "establishes rules of practice and procedures for actions to 'quiet' title (that is, to determine the validity of adverse claims or other clouds on title) to real property and requires an action to quiet title under existing law to be maintained in accordance with the bill's provisions." Fiscal and Policy Note at 1. In summarizing the current law and background of House Bill 920, the Fiscal and Policy Note stated, in relevant part, that "State law d[id] not specify the procedures to be followed in an action to quiet title[,]" and that the Maryland Land Title Association had "report[ed] that its members [were] seeing inconsistent processes used from case to case and county to county[,]" which caused "uncertainty concerning the process under existing laws," resulting in some title insurance underwriters "refus[ing] to insure the title of a person who has brought an action to quiet title." Id. at 4-5. The Fiscal and Policy Note also summarized House Bill 920's provisions, outlining the various procedures established by House Bill 920. See id. at 1-4. In other words, the Fiscal and Policy Note shows that the General Assembly's main purpose in enacting the new statutes was to establish and implement uniform procedures governing actions to quiet title, and to remedy the problems that were caused by then-existing inconsistent processes.

As a final point, given the clear legislative intent that the new statutes are procedural and remedial in nature, we note that House Bill 920's effective date clause—*i.e.*, that House Bill 920 "shall take effect October 1, 2016[,]" 2016 Md. Laws 5711 (Vol. VII, Ch. 396, H.B. 920)—does not express an intent to limit the applicability of the new statutes only to

actions to quiet title that were initiated after October 1, 2016. Stated otherwise, despite enacting new statutes that are procedural and remedial, and thus ordinarily would apply retroactively, the General Assembly did not indicate any intent that was contrary to retroactive application, either in the effective date clause or elsewhere.

Similarly, we note that, although nothing in the language of Maryland Rules 12-801 to 12-811 indicates whether the new Rules were intended to apply prospectively or retroactively, a review of the rule history plainly demonstrates the clear intent that the new Maryland Rules be procedural and remedial, and thus apply retroactively. In the cover letter to this Court accompanying the One Hundred Ninety-First Report of the Rules Committee, the Chair of the Rules Committee stated that, although actions to quiet title had long been authorized by RP § 14-108 and its predecessors, "no Rules were adopted to set forth the procedures for prosecuting them, and the Maryland Land Title Association reported that inconsistent procedures were being used in the various counties." One Hundred Ninety-First Report at 16. Most significantly, in this Court's Rules Order adopting Maryland Rules 12-801 to 12-811 as a new chapter governing actions to quiet title, this Court expressly provided "that the rules changes hereby adopted . . . shall take effect and apply to all actions [that were] commenced on or after April 1, 2017 and, insofar as practicable, to all actions [that were] then pending[.]" Rules Order at 3. Simply put, we clearly stated our intent that the new Maryland Rules governing actions to quiet title were to apply retroactively to all actions, including, insofar as practicable, all actions that were then pending when the new Maryland Rules became effective.

In short, the legislative and rule history of RP §§ 14-601 to 14-621 and Maryland

Rules 12-801 to 12-811, respectively, confirms that the new statutes and Maryland Rules are procedural and remedial, and intended to apply retroactively, thus overcoming the presumption of prospective application. And, we have no difficulty in concluding that retroactive application does not contravene any Constitutional right or prohibition. Accordingly, whether under the exceptions to the presumption of prospective application or the two-part test for retroactive application, it is plain that RP §§ 14-601 to 14-621 and Maryland Rules 12-801 to 12-811 apply retroactively to "cases [that were] pending in court when the statute[s and Maryland Rules] bec[a]me[] effective[,]" Pautsch, 423 Md. at 263, 31 A.3d at 509 (citation omitted), *i.e.*, "to all actions[,] whether accrued, pending[,] or future," Langston, 359 Md. at 407, 754 A.2d at 394 (cleaned up). This includes cases that are pending on appeal, because "an appellate court is bound to decide a case according to existing laws," and "will apply a change in the law after a [trial court's] decision [] unless vested or accrued substantive rights would be disturbed or unless the [General Assembly] shows a contrary intent." McHale, 415 Md. at 161, 999 A.2d at 978 (cleaned up). As such, the new statutes and Maryland Rules governing actions to quiet title should have been applied to this case while the case was pending in the Court of Special Appeals.

In our view, applying RP §§ 14-601 to 14-621 and Maryland Rules 12-801 to 12-811 to this case does not yield the result that the Court of Special Appeals reached—vacating the circuit court's judgment and remanding this case to that court with instructions to dismiss this case. Stated otherwise, the new statutes and Maryland Rules do not require automatic dismissal for the failure to join a deceased record owner who has no known personal representative. Although RP § 14-108(b) requires that a record owner be made a

defendant to an action to quiet title—and, undisputedly, that did not occur in this case—under the instant circumstances, we determine that the proper course of action is to reverse the Court of Special Appeals's judgment and remand this case to that Court with instructions to vacate the circuit court's judgment and remand this case to the circuit court for further proceedings. On remand, the Estate should follow the procedures that are outlined in the new statutes and Maryland Rules concerning joinder of a defendant who is a deceased record owner with no known personal representative. In other words, on remand, the Estate would be permitted to file an amended complaint that is accompanied by the necessary affidavit that is described in RP § 14-610(b) and Maryland Rule 12-805(b), and to provide any other information that the new statutes and Maryland Rules require with respect to a deceased defendant with no known personal representative.

Having determined that RP §§ 14-601 to 14-621 and Maryland Rules 12-801 to 12-811 apply retroactively, and that this case is to be remanded to the circuit court for further proceedings consistent with this opinion, *i.e.*, the filing of an amended complaint with the necessary affidavit, we also briefly address the matter of issue preclusion with respect to the complaint to quiet title and the counterclaim. Recently, in Bank of New York Mellon v. Georg, 456 Md. 616, 625-26, 175 A.3d 720, 725 (2017), we explained the doctrine of collateral estoppel, or issue preclusion, stating:

> [T]his Court has described the doctrine of collateral estoppel, or issue preclusion, as follows: When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. For the doctrine of collateral estoppel to apply, the following four-part test must be satisfied:

- 42 -

> 1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
>
> 2. Was there a final judgment on the merits?
>
> 3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
>
> 4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

(Cleaned up). We further explained that "[c]ollateral estoppel is concerned with the issue implications of the earlier litigation of a different case[.]" Id. at 626, 175 A.3d at 725 (citation omitted). Moreover,

> when collateral estoppel applies, facts or issues [that were] decided in the previous action are conclusive only if [they are] identical to facts or issues [that are] presented in the subsequent proceeding. Stated otherwise, collateral estoppel may be invoked when[,] in a second suit between the same parties, even if the cause of action is different, any determination of fact that was actually litigated and was essential to a valid and final judgment is conclusive.

Id. at 668-69, 175 A.3d at 750 (cleaned up).

In this case, we conclude that there is no issue preclusion with respect to the complaint to quiet title or counterclaim. As a practical matter, because we are vacating the circuit court's judgment, there is no longer a final judgment on the merits concerning the complaint or the counterclaim, and any facts or issues that were decided by the circuit court, and that are encapsulated by that soon-to-be vacated judgment, are no longer conclusive in any action. Additionally, we note that another requirement of collateral estoppel, or issue preclusion, is that there be two actions between the same parties, *i.e.*, a prior adjudication and a subsequent action. Here, by virtue of vacating the circuit court's

- 43 -

judgment and remanding this case for further proceedings in the same case, there is but one action between the parties, not two. In short, we determine that there is no issue as to collateral estoppel, or issue preclusion, given that we are ordering that the circuit court's judgment be vacated and that this case be remanded for the filing of an amended complaint. And, for purposes of the remand, we refrain from expressing an opinion as to the merits of either party's claim to the Disputed Property or as to Respondents' counterclaim for trespass, but we note that the counterclaim barely makes out a cause of action, consisting of only six one-sentence paragraphs.[10]

In sum, we hold that RP §§ 14-601 to 14-621 and Maryland Rules 12-801 to 12-811 apply retroactively to all cases that were pending in court when the statutes and Maryland Rules became effective, including this case, which was pending in the Court of Special Appeals, because the new statutes and Maryland Rules govern procedures that are related to actions to quiet title and are remedial in nature, they do not impair any substantive or vested rights, and neither the General Assembly nor this Court, in enacting the new statutes and adopting the new Maryland Rules, respectively, has shown an intent to the contrary. And, we hold that, under the circumstances of this case, the proper disposition is to reverse the Court of Special Appeals's judgment and remand this case to that Court with instructions to vacate the circuit court's judgment and remand this case to the circuit court for further proceedings, so that the Estate can follow the procedures that are outlined in the new statutes and Maryland Rules concerning joinder of a defendant who is a deceased

_____

[10]At the risk of stating the obvious, on remand, Respondents would be free to file any appropriate response to the amended complaint, including an amended counterclaim.

- 44 -

record owner with no known personal representative. Finally, for purposes of the remand, we determine that there is no issue preclusion as to the complaint or counterclaim, and we express no opinion as to the merits of either party's claim to the Disputed Property or as to Respondents' counterclaim for trespass.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AND REMAND TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

Circuit Court for Frederick County
Case No. 10-C-14-001668
Argued: March 1, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No. 62

September Term, 2017

_____

ESTATE OF CHARLES HOWARD
ZIMMERMAN, ROBERT CLAYTON
STEVENS, PERSONAL
REPRESENTATIVE

v.

ERICH E. BLATTER, ET. UX.

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Dissenting Opinion by Hotten, J.

_____

Filed: April 20, 2018

Respectfully, I dissent and would affirm the judgment of the Court of Special Appeals.

Md. Code (Repl. Vol. 2015), § 14-601 *et seq.* of the Real Property Article and Md. Rule 12-801 *et seq.* became effective after the trial proceedings in this case, and thus, should not apply to this appeal. Md. Code (Repl. Vol. 2015), § 14-601 of the Real Property Article, ("REAL PROP.") and Md. Rule 12-801 substantively affect a party's ability to present a claim. The common law presumes against retroactive effect, unless there is clear expression of legislative intent to the contrary. Without such an expression, there should be no retroactive application.

In an action to quiet title, the record owner is a necessary party. REAL PROP. § 14-108 (b). A quiet title action seeks to secure the resolution of absolute ownership and the right to dispose of the property. The record seems to indicate that the disputed property was originally in Respondent's chain of title, but in 1886, was conveyed out of the chain of title. The record does not reflect the circumstances of the conveyance out of title. In this case, a personal representative of the deceased owner was a necessary party, and "[REAL PROP.] § 14–108(b) plainly required the [e]state to join the record owner." *Blatter v. Estate of Zimmerman*, No. 2146, SEPT. TERM, 2015, 2017 WL 2730237, at *7 (Md. Ct. Spec. App. June 26, 2017).

For the reasons expressed above, I dissent and would affirm the judgment of the Court of Special Appeals.